IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELVIN JONES,

                    Plaintiff,

        v.

UNIT MANAGER BROWN, LT. BROWN-LUCAS,                    OPINION and ORDER
ALPHA SGT. MAZENETT, CO SEIRZANT,                           25-cv-1063-jdp
CO STEINER, CO VANHAUNER, CO FROKE,
and CO LEINEN,

                    Defendants.

---

Plaintiff Melvin Jones, proceeding without counsel, is a prisoner at the Wisconsin Secure Program Facility. Jones alleges that prison staff sexually humiliated him by forcing him to stand in the back of his cell when they came to bring him food, medication, and other items, and deprived him of those materials when he refused their commands. Jones has paid the entire $405 filing fee for this lawsuit.

Because Jones is a prisoner suing government officials, the next step is for me to screen Jones's complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. In doing so, I must accept his allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

I conclude that Jones allegations don't support a claim for relief, but I will give him a chance to file an amended complaint.

ALLEGATIONS OF FACT

In August 2024, Jones was placed in temporary lockup status after he was charged with a disciplinary infraction. Jones believed that he was given a "back of the cell" restriction, which meant that when officers came to his cell front, he would have to sit on his toilet while facing the back wall. It turns out that Jones was not actually given that status. In any event, for the first few days in this status, Jones followed the back-of-the-cell procedure without incident.

On the fourth day that Jones was in this status, defendant correctional officers Vanhauner and Steiner arrived at his cell with breakfast and told him to stand up from the toilet and place both of his hands on the side of the mirror. Jones calls this "straddling the toilet." This wasn't part of the usual procedure and I take Jones to be saying that he found this to be demeaning in a sexual way: he told defendants that "he wasn't about to do no gay shit in order to eat." Dkt. 1, at 3. Jones refused to eat and told defendants that he felt suicidal because of this attempt to demean him. When asked if he wanted to go on observation status, Jones said no, and that he wanted to talk to a supervisor.

Defendant supervisor Brown-Lucas came to Jones's cell. Brown-Lucas told Jones that sitting on the toilet was the correct way to follow the procedure and that he would tell staff that Jones had been doing it correctly. Brown-Lucas got Jones his breakfast.

At lunchtime, defendant Vanhauner again told Jones to straddle the toilet instead of sitting on it as the unusual procedure required. Jones refused, so Vanhauner refused to give him his lunch. Jones called for Brown-Lucas, who reiterated to staff that Jones had been following the procedure, and he ensured that Jones received his meal, which at this point was cold.

The next morning, unidentified staff once again told Jones to straddle the toilet. Jones used the intercom to call defendant Sergeant Mazenett. Mazenett told Jones to do as staff asked; Jones didn't receive his breakfast. Jones later spoke with Brown-Lucas when he came to Jones's cell with his medication. Brown-Lucas told Jones that even though he had been properly following the back-of-the-cell procedure, he had to do as staff said because the unit was run by another supervisor, defendant Brown. Jones refused to straddle the toilet, so Brown-Lucas refused him medication.

Over the next few days, Jones was refused food, pain medication, fresh clothes, and a towel because he refused to straddle the toilet. He received conduct reports for his refusals. He also filed grievances about being forced to follow-back-of-the-cell restrictions even though he hadn't formally been placed on them; the grievance examiner stated that an officer intended to place him on that restriction but failed to formally enter that order.

ANALYSIS

Jones contends that defendants harmed him by making him "straddle" the toilet to get food, pain medication and other items. Prison staff violates the Eighth Amendment if they perform some action that is "intended to humiliate the victim or gratify the assailant's sexual desires." *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012). And refusing a prisoner food or medicine could also violate the Eighth Amendment. But prison staff violates the Constitution only by taking intentional or extremely reckless actions that violate a prisoner's rights. *See, e.g.*, *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (standard is "akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive

risk of serious harm to the inmate"). And prison staff is entitled to take actions—like enforce back-of-the-cell restrictions—to keep themselves safe.

Even given the generous reading that I must give Jones's complaint, his current allegations don't support an Eighth Amendment claim. He doesn't explain (1) what about being forced to stand rather than sit on the toilet was sexually humiliating; and (2) how he knows that defendants also believed that it was sexually humiliating yet forced him to do it anyway. Jones stresses that he wasn't actually placed on the back-of-the-cell restriction and that he followed the policy by sitting yet officers made him stand. But a mere violation of a prison policy does not automatically violate the Eighth Amendment. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020), and there's no indication from Jones's allegations that staff incorrectly enforced the policy against him specifically to demean him,

Because Jones appears without counsel, I will not dismiss the case outright. *See Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016) ("when a plaintiff—especially [an unrepresented] plaintiff—fails to state a claim in his first complaint, he should ordinarily be given a chance to amend."). Instead, I will give him a chance to file an amended complaint better explaining his claims. In drafting his amended complaint, Jones should explain why defendants making him stand was sexually humiliating and how each defendant he attempts to sue was aware of his humiliation.

If Jones fails to submit an amended complaint by the deadline set below, I will dismiss the entire case. *See Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

ORDER

IT IS ORDERED that plaintiff may have until June 2, 2026, to respond to this order as directed in the opinion above.

Entered May 12, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge